## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                        :
MARQUIA N.                              :
                                        :
        v.                              :        NO. 25-CV-3583
                                        :
FRANK BISIGNANO                         :
Commissioner of Social Security         :
_____ :

## O P I N I O N

SCOTT W. REID                                    DATE:  December 1, 2025
UNITED STATES MAGISTRATE JUDGE

Marquia N. brought this action under 42 U.S.C. §405(g) to obtain review of the decision

of the Commissioner of Social Security denying her claim for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI").  She has filed a Request for Review to

which the Commissioner has responded.  As explained below, I recommend that Marquia N.'s

Request for Review be denied, and judgment entered in favor of the Defendant.

I.      *Factual and Procedural Background*

Marquia N. was born on March 3, 1995.  Record at 251.  She completed high school,

with some special education components.  Record at 306.  In the past, she worked as a home

health aide, and as a cashier.  Record at 307.  On September 1, 2022, she filed applications for

DIB and SSI, alleging disability since November 1, 2019, on the basis of epilepsy, post-traumatic

distress disorder ("PTSD"), anxiety, depression, anxiety, insomnia, and a gynecological disorder.

Record at 251, 305.

Marquia N.'s applications for benefits were denied on June 26, 2023.  Record at 75, 85.
They were denied on reconsideration on September 11, 2023.  Record at 94, 106.  Marquia N.
then requested reconsideration *de novo* by an Administrative Law Judge ("ALJ").  Record at
144.

A hearing was held in this case on July 17, 2024.  Record at 46.  On July 23, 2024,
however, the ALJ issued a written decision denying benefits.  Record at 23.  The Appeals
Council denied Marquia N.'s request for review on May 13, 2025, permitting the ALJ's decision
to serve as the final decision of the Commissioner of Social Security.  Record at 1.

II.    *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's
decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402
U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence
is relevant evidence which a reasonable mind might deem adequate to support a decision.
*Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied
the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*,
Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically
determinable basis for an impairment that prevents him from engaging in any 'substantial gainful
activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  As explained in the
following agency regulation, each case is evaluated by the Commissioner according to a five-
step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial
> gainful activity, we will find that you are not disabled.  (ii)  At the second step, we
> consider the medical severity of your impairment(s).  If you do not have a severe
> medically determinable physical or mental impairment that meets the duration

requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  *Id.*  The RFC assessment reflects the most an individual can still do, despite any limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id.*

III.     *The ALJ's Decision and the Claimant's Request for Review*

In his decision, the ALJ found that Marquia N. suffered from the severe impairments of a seizure disorder, an intellectual disability, depressive disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), and an internally rotated right foot.  Record at 28.  He determined that no impairment, and no combination of impairments, met or medically equaled a listed impairment.  Record at 31.

The ALJ determined that Marquia N. retained the RFC to perform sedentary work with the following additional limitations:

She can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can occasionally engage in balancing, stooping, kneeling, crouching, or crawling.

3

She must avoid concentrated exposure to dust, odors, gases, fumes, poorly ventilated areas, and other pulmonary irritants.  She must avoid even moderate exposure to unprotected heights and hazardous moving machinery.  She must avoid exposure to bodies of water that pose a risk of drowning.  She must avoid commercial driving.  She is able to understand, remember, and carry out short, simple instructions for the performance of routine and repetitive tasks.  She can sustain concentration, persistence, and pace for two-hour periods of time.  She can make simple work-related decisions.  She can occasionally interact with supervisors, infrequently or incidentally interact with coworkers, and never interact with the general public.  She can adapt to infrequent changes in the workplace.  She cannot work at a specific piece or production rate pace.

Record at 34.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Marquia N. could work in such occupations as type copy examiner, table worker, or surveillance system monitor.  Record at 38-9.  He decided, therefore, that she was not disabled. Record at 39.

In her Request for Review, Marquia N. argues that the ALJ erred in failing to explain the basis for his decision that she could never interact with the general public, yet she could infrequently interact with coworkers and occasionally interact with supervisors.  This, despite finding persuasive the opinions from reviewing agency mental health experts that Marquia N. had moderate limitations in the inability to interact with others.  She also maintains that the ALJ erred in finding the report of the consultative examining mental health expert to be persuasive but failing to include in his RFC assessment the moderate limitations she found in Marquia N.'s ability to understand, remember, and carry out short, simple instructions.

IV.    *Discussion*

    A.    *The Ability to Interact with Others*

As above, the ALJ found that Marquia N. could occasionally interact with supervisors, "infrequently or incidentally" interact with coworkers, and never interact with the public. Record at 34. Marquia N. argues that the ALJ erred in failing to explain "how he arrived at these vastly different interaction levels." She also argues that his findings were inconsistent with the opinions of the reviewing agency experts, although he wrote that their reports were persuasive.

Initially, it can be noted that the Mental RFC form completed by reviewing agency mental health experts, and the RFC form completed by consulting independent experts, routinely asks, separately, about a claimant's ability to interact socially with the general public, supervisors, and coworkers. *See* Record at 82, 873. The fact that an expert may have different opinions regarding these three categories of individuals is, therefore, by no means a controversial proposition. In itself, it requires no explanation from the ALJ.

Secondly, the interaction levels found by the ALJ were not "vastly different." They were all relatively low levels, ranging from none to only occasional. This, if nothing else, differentiates this case from *Bangert v. O'Malley*, Civ. A. No. 22-1476, 2024 WL 5008836 at *9 (D. Del. Dec. 6, 2024) which Marquia N. cites, where a case was remanded in part because the ALJ failed to explain how the claimant could be incapable of any interaction with the public, but capable of "frequent" interaction with supervisors or co-employees. Here, the ALJ did not find that Marquia N. could frequently interact with anyone.

Moreover, in *Bangert*, the opinions and treatment records of the medical sources upon which the ALJ relied indicated that the claimant could only work in "no-contact or low-contact work environments." *Id*. This left the ALJ's finding that she could frequently interact with supervisors and co-workers unsupported by medical evidence.

In this case, by contrast, the ALJ's findings were more restrictive than those of the opining mental health experts. There is no opinion from a treating expert. The reviewing agency mental health experts, Marci Cloutier, Ph.D., and Dawn Marie Long, Ph.D., agreed that Marquia N. was "moderately" limited in her ability to interact with others. Record at 87, 98. They both specified that Marquia N. was moderately limited in the ability to interact with the public, and to accept criticism from supervisors. Record at 87, 91, 98, 103. The doctors also agreed that Marquia N. was not significantly limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Record at 91, 103.

Yet, the ALJ found that Marquia N.'s limitation in her ability to interact with others was marked, and not merely moderate. Record at 32. He also found that she was limited in her ability to interact with coworkers, which Drs. Cloutier and Long did not. *Id*. A "marked limitation" means that an individual's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Part 404, Subpart P, Appendix 1 at §12.00E2d. Unlike an "extreme limitation," it does not mean that an individual is unable to function in that area. *Id*. at § 12.00E2e. It would, however, require serious restrictions, and this is what the ALJ provided in his RFC assessment.

Moreover, Marquia N.'s arguments notwithstanding, the ALJ specifically explained why he differed in some respects from Dr. Cloutier, whose opinion he generally found to be "persuasive":

> The claimant has very little mental health treatment and consistently showed normal mental status examinations with her treatment providers.  The undersigned has allowed for a greater degree of limitation than described here due to the claimant's testimony that she was unable to work in a customer service setting with her mental impairments.  This testimony is inconsistent with her presentation at the treatment visits.  This opinion is likely a more accurate representation of the claimant's true abilities.  However, the undersigned will grant her the benefit of the doubt.

Record at 36.

Although the ALJ's decision would have benefitted from pinpoint cites to the evidence upon which he relied, examination of the record shows that this statement is supported by substantial evidence.  It is certainly supported by Marquia N.'s testimony.  She described difficulty interacting with the public.  Record at 60 ("[L]ike say if a customer gets mad at me about something, you know, in my head I'm just – I want to, you know, lose my mind").  However, she testified that she "would be able to" take a job involving no contact with the public.  Record at 64.  As to her history, Marquia N. told consulting mental health expert Ellen Foster, Ph.D., on May 31, 2023, that she was on a waiting list for therapy, but had no past treatment by a mental health care provider.  Record at 865.

Clearly, it is illogical for Marquia N. to seek remand or reversal on the basis that the ALJ's RFC assessment was more favorable to her than the RFC assessments of other medical experts.  If the matter was remanded, the only possible different outcome she could obtain would be a decision that she was capable of a broader range of work that the ALJ originally found.  Further, the ALJ adequately explained his conclusions.  Therefore, this claim does not provide any basis for relief.

   B.    *Dr. Foster's Opinion*

As above, Dr. Foster, the consulting mental health expert, met with Marquia N. on May 31, 2023.  Record at 865.  Dr. Foster observed that Marquia N. appeared depressed, but also

noted that she was well-groomed, with normal motor behavior. Record at 867. Her thought processes were coherent and goal directed, with no evidence of hallucinations, delusions, or paranoia, and she was fully oriented. *Id*. Her attention and concentration were mildly impaired, as were her recent and remote memory, and her cognitive function. Record at 868. However, her insight and judgment were fair, and she was noted to have normal eye contact, and to be cooperative and friendly. *Id*.

Dr. Foster administered I.Q. testing. She noted that Marquia N. worked with reflection and deliberation. Record at 868. She needed directions repeated at times, but her manner of responding was "mostly deliberate, orderly, and self-correcting." *Id*. Based on the testing and examination, Dr. Foster diagnosed Marquia N. with a mild intellectual disability, a major depressive disorder, PTSD, and an anxiety disorder. Record at 870. As Marquia N. points out, Dr. Foster also indicated that she would be moderately impaired in the ability to understand, remember, and carry out simple instructions. Record at 872.

The ALJ wrote in his decision:

Doctor Foster gave some opinion of the claimant's mental abilities with her examination report. **She said the claimant had moderate limitation of the ability to understand, remember, and carry out simple instructions, as well as to make judgments on simple work-related decisions.** She said the claimant had a marked limitation of the ability to understand, remember and carry out complex instructions, as well as to make judgments on complex instructions, as well as to make judgments on complex work-related decisions. She said the claimant had moderate limitations of the ability to interact with the public, supervisors, and coworkers, as well as to respond appropriately to usual work situations and to changes in the routine work setting. The undersigned finds this opinion persuasive. **The claimant showed good abilities in daily functioning as well as the ability to perform simple tasks and procedures. This is evident by her day-to-day functioning and her work history.**

Record at 36. (Emphasis provided).

As the bolded section of the above quotation demonstrates, Marquia N. is mistaken in writing that the ALJ "did not even mention" Dr. Foster's finding of moderate limitations in handling simple instructions and decisions. *Request for Review* at 6. She is also mistaken in arguing that the ALJ "did not explain why he did not account for" these limitations in his RFC assessment; as above, the ALJ wrote that he relied upon Marquia N.'s "day-to-day functioning and her work history."

This is not to say that this part of the ALJ's decision is perfect. It lacks any language explaining that the last two sentences in the paragraph represent an exception to his general finding that Dr. Foster's opinion was persuasive. And, again, it lacks a citation to the evidence of record which would support his remark about Marquia N.'s "day-to-day functioning and her work history."

Nevertheless, remand is unnecessary where it would not affect the outcome of the case. *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005). Here, the ALJ wrote earlier in his decision that Marquia N. "has shown the ability to perform at the semi-skilled level as evident in her work history." Record at 32. The testimony of the vocational expert confirms this. At the hearing, she testified that Marquia N.'s past relevant work as a home health aide required Level 3 reasoning, which would make it semi-skilled work. Record at 67; SSR 00-4p, 2000 WL 1898704 at *3 (Dec. 4, 2000).

As to Marquia N.'s daily activities, she indicated in her function report, completed on December 8, 2022, that she was able to do housework and laundry weekly, and that she cooked frozen or crock-pot meals two or three times per week. Record at 331. Further, in a medical history form provided by Dr. Foster, Marquia N. wrote that she cooked twice per week, cleaned four times per week, did the laundry twice, shopped once, and bathed three times per week,

although she told Dr. Foster that she sometimes lacked the energy to do these things.  Record at

869, 876.  Marquia N. has not pointed to any record evidence which would contradict this.

 Because substantial evidence supports the ALJ's observations as to Marquia N.'s day-to-

day functioning, there is no reason to expect that the outcome would be different if the case were

remanded.  *See Rutherford*, *supra*.  Accordingly, no relief is warranted on this claim.

V. *Conclusion*

 In accordance with the above discussion, I conclude that the Plaintiff's Request for

Review should be denied, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*

_____

SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE